# Dietrich's Appeal.

An award of arbitrators, made under the act of 1810, continues to be a lien on the lands of the defendant during the pendency of the appeal, without a *scire facias* to revive the same. The limitation of the lien of five years created by the act of 1798 will commence to run at the date of the withdrawal of the appeal.

APPEAL by George Dietrich from the decree of the district court of Lancaster county, appropriating the proceeds of the sale of the real estate of George Shaeffer. The facts are fully stated in the opinion of the court.

*Parke*, for the appellant, whom the court declined to hear.

*Jenkins*, for the appellee, cited, the acts of 1798 and 1827, and Williamson *v.* Pool, 4 *Rawle* 317.

The opinion of the Court, was delivered by
KENNEDY, J.—This is a contest between George Dietrich, and the Farmer's Bank of Lancaster, judgment creditors of George Shaeffer, for the money produced by a judicial sale of the real estate of the debtor. Dietrich brought an action of debt against Shaeffer, in the district court of Lancaster county, to June term 1827, which was referred to arbitrators, under the compulsory arbitration law. The arbitrators transmitted to the prothonotary's office an award in favour of Dietrich, for 203 dollars, besides the costs of suit, which was entered on the docket of the prothonotary the 13th day of August 1827. Shaeffer, the defendant, within twenty days afterwards, the time allowed for that purpose, appealed from the award of the arbitrators to the court, where the suit continued pending upon the appeal till the 21st of October 1829, when the defendant, by the consent of the plaintiff in the suit, withdrew his appeal, thereby confirming the award and judgment of the arbitrators.

On the 14th of June 1831, the Farmer's Bank of Lancaster obtained, in the same court, a judgment against Shaeffer for 1200 dollars. Upon this judgment, a *fieri facias* was subsequently sued out, and, by virtue thereof, the real estate of Shaeffer, lying within the county of Lancaster, was seized and taken in execution ; and, after being condemned to sale, was sold by the sheriff, under a writ of *venditioni exponas*, returnable to June term 1834 of the court, for 1175 dollars. This money was paid into the district court by the sheriff for distribution ; and the court, conceiving that the Farmer's Bank of Lancaster, by virtue of their judgment, had the first and

oldest lien in being on the estate, at the time of the sale thereof, decreed that the money arising therefrom should be paid to the Bank, towards satisfying their judgment.   From this decree of the district court, George Dietrich has appealed to this court.

He alleges that the decree is erroneous, and cannot be sustained, because the entry of the award of the arbitrators in his favour, against George Schaffer, on the docket of the prothonotary, created a lien for the amount thereof on the estate sold, from the time of such entry, which was long anterior to the time when the bank obtained their judgment, and that the lien created by the entry of the award was, and continued to be, in full force at the time of the sale.   It is admitted that the appellant acquired a lien for the amount of the award by the entry of it on the prothonotary's docket: but it is argued that, inasmuch as this lien was not continued by suing out a *scire facias* in the manner prescribed by the acts of assembly of 1798 and 1827, limiting the lien of judgments to a term of five years unless revived as therein directed, it expired at the end of five years from the date of the entry of the award on the prothonotary's docket; and that he, therefore, had no lien whatever for his debt under the award against the estate at the time of the sale.

By the tenth section of the act of 1810, regulating arbitrations, it is declared that the award of the arbitrators made in pursuance of that act, after being transmitted to the prothonotary's office, and entered by him on his docket, shall, from such entry, " have the effect of a judgment against the party, against whom it is made, and be a *lien* on his real estate *until* such judgment be *reversed on appeal*." By the act of the 4th of April 1798, it is enacted that no judgment thereafter entered in any court of record within the commonwealth, shall continue a lien on the real estate of the person against whom such judgment shall be entered during a longer term than five years from the first day of the term of which such judgment shall be so entered; unless the plaintiff therein, or his legal representatives, or other persons interested, shall, within the said term of five years, sue out a *scire facias* to revive the same.   And afterwards, by a supplementary act on this subject, passed the 26th of March 1827, the term of five years is made to commence from the time of entering the judgment, or the revival thereof, instead of the first day of the term of the court of which it shall be entered: and, in order to continue the lien of a judgment beyond the term of five years from the date of its entry, it is made requisite to have it revived, either by agreement of the parties or by suing out a writ of *scire facias*, according to the provisions therein contained, notwithstanding an execution may have been sued out on it within a year and a day from the rendition thereof, or a stay of execution may be entered on such judgment, or a time subsequent to the rendering of it may be appointed by the agreement of the parties for the payment of the same, or some part thereof; or notwithstanding any other condition or contingency may be attached to such judgment; or an execution may have issued

IV.—2 B

on it; and, moreover, that no order or rule of court, or any other process or proceeding thereof, shall have the effect of obviating the necessity of the revival, in the manner therein prescribed, of any judgments whatever. Now, *according to the strict letter of these acts,* it might, perhaps, admit of a question, whether the award of arbitrators comes within the provisions made for limiting and continuing the liens of judgments: for neither the act of 1798, nor that of 1827, contains any express mention of a lien created by the entry of an award on the prothonotary's docket, pursuant to the act of 1810. This act, it may be remarked, contains within itself an express limitation of the duration of the lien created by entering the award on the prothonotary's docket, by declaring that it shall "be a lien on his [meaning the party against whom it is made] real estate until it shall be reversed on an appeal." But as this would seem to leave part of the evil unprovided for, which the legislature doubtless intended to remedy, I therefore feel myself bound to give such construction to these acts as will most effectually promote the end which the legislature had in view when they passed them. It being declared by the act of 1810, that the award, after it shall have been entered on the docket of the prothonotary, shall "have the effect of a judgment against the party against whom it is made," it is but fair to consider it as falling under the same rule that is prescribed for limiting and continuing the lien of judgments generally, as soon as it shall have acquired all the properties and the efficacy of a judgment of a court of record. But it is obvious, for several reasons, that an award of arbitrators, from which the party against whom it is made has appealed, cannot be considered as having all the properties and the efficacy of a judgment. The rights of the parties are not determined by it. The suit or action is not ended by it. By means of the appeal, it is still pending between the parties, and as much undetermined as ever it was: so much so, that if the cause of action be personal, and such as will die with the person, and the party should die before the trial of the appeal, the right of action is thereby extinguished. The award is not even *prima facie* evidence that there is any thing due from the party against whom it is made; for, on the trial of the appeal, it cannot be read or given in evidence against him, and his adversary is bound to establish his right to recover, if he has any, precisely in the same manner, and with as much proof as if the award had never been made. Before, then, the appeal from the award is ended in some way, either by the agreement of the parties, or by a proceeding according to the course of the court, and the award is thereby *confirmed,* in whole or in part, it cannot, with propriety, be considered as coming within the provisions of the acts of 1798 and 1827, limiting the liens of judgments. Indeed it is difficult even to imagine how a writ of *scire facias* could be sued out and proceeded on to a judgment of revival pending the appeal from the award of the arbitrators. And is it not still more so to conceive any possible advantage that could be gained from doing so,

either by the public or individuals? It would be commencing and carrying on two or more suits, when one is] not only sufficient to determine the rights of the parties litigant, but equally well adapted to answer all the purposes of public policy, which is, to give notice to the public that the party in whose favour the award is made still claims the amount of it, and that it remained unsettled. Unless, then, it be desirable to consume time in litigation, to accumulate costs, and to make extra fees for the benefit of the officers of the court, I can perceive no reason why a *scire facias* should be required to be sued out on an award pending an appeal from it.

And although the act of 1827 does require, in order to continue the lien of a judgment beyond the term of five years, that it shall be revived in the manner therein prescribed, notwithstanding there may be a proceeding upon it by execution or otherwise, showing that the party is doing all he can to enforce the execution of it; yet there is certainly nothing in any of the special provisions and clauses of either of the acts which can be said to embrace the present case, either expressly or constructively. Nor is an award of arbitrators that is appealed from during the pendency of the appeal, of such a nature that any of the proceedings therein mentioned as not being sufficient to obviate the necessity of reviving a judgment in the manner therein prescribed, could be had on it. I feel satisfied, therefore, that, according to the true spirit and meaning of the acts of assembly on this subject, the term of five years, limiting the lien which Dietrich the appellant acquired by the award in his favour on the real estate of Sheaffer, sold by the sheriff, did not commence until the 21st day of October, when the award, by the withdrawal of the appeal from it, became in law a judgment conclusive of the rights of the parties. Of consequence, the sale of the estate having been made within less than five years from this date, his lien was in full force at the time of it; and he is therefore entitled to be paid first, the amount of his claim under the award, out of the proceeds of the sale. The decree of the district court is reversed; and this court decree and order that George Dietrich, the appellant, be first paid the amount of his judgment against George Sheaffer out of the money arising from the sale made by the sheriff of the real estate of the said Sheaffer, and that the residue of the money be paid to the Farmer's Bank of Lancaster towards discharging their judgment against Sheaffer.

Decree accordingly.